STATE ex rel. WILLIAMSON, Atty. Gen., v. KNIGHT, Adm'r, et al.

No. 30809. April 6, 1943.

Rehearing Denied June 8, 1943.

*137 P. 2d 894.*

Mac Q. Williamson, Atty. Gen., P. C. Lackey, Asst. Atty. Gen., and William M. Franklin, Attorney for the Depart-

ment of Public Welfare, of Oklahoma City, for plaintiff in error.

Welch & Welch, of Madill, for defendant in error.

OSBORN, J. This action was instituted in the district court of Marshall county by the State of Oklahoma ex rel. Mac Q. Williamson, Attorney General, hereinafter referred to as plaintiff, against Robert L. Knight, administrator of the estate of Alice Jane Knight, deceased, Robert L. Knight, individually, and J. O. Minter and Joe Isbell, sureties on the administrator's bond, hereinafter referred to as defendants, in which recovery was sought of certain funds paid to Alice Jane Knight during her lifetime, as old-age assistance under the Social Security Amendment (article 25 of the Constitution of Oklahoma) and the Oklahoma Social Security Act, it being contended that the deceased had secured said payments through misrepresentation and concealment of material facts and, under the provisions of the act, said payments constituted a debt due the State of Oklahoma. Issues were joined, the cause was tried to a jury, and a verdict was returned in favor of defendants. From a judgment thereon, plaintiff has appealed.

Article 25 of the Constitution, which was adopted by the people on July 7, 1936, is an amendment relating to social security, and authorized the Legislature and the people by initiative petition to provide by appropriate legislation for the relief and care of needy aged persons unable to provide for themselves. The constitutional provision authorized the creation of a Department of Public Welfare and an Oklahoma Public Welfare Commission, which commission was to formulate policies and adopt rules and regulations for the effective administration of the duties of the department, which consist of the administration of all laws enacted pursuant to the authority granted by the constitutional amendment. At various times subsequent to the adoption of the amendment, legislation with reference to the administration of social security was enacted. During the period involved in the instant case, chapter 7, Title 56, O. S. 1941, was in effect.

On October 1, 1936, the deceased, Alice Jane Knight, made application for old-age assistance, which was duly granted, and certain payments were made to her from the dates of September 1, 1936, to October 21, 1940, during which period she was paid a total of $593. After her death it was discovered that there was a time deposit to her credit in the First National Bank of Madill, Okla., in the sum of $895, which deposit had been in said bank since the date of December 26, 1935.

Under the rules adopted by the Public Welfare Commission, a person is not entitled to assistance as a needy aged person if said person possesses cash or other liquidable assets in excess of fixed amounts. On August 2, 1936, said amount was fixed at $50, and thereafter, from time to time, the amount was increased until, upon the date of death of Alice Jane Knight, said amount was fixed at $250 for a single person. Liquidable assets were defined to include cash, postal savings, bank deposits, stocks, bonds, and certain other assets. No contention is made that the commission was not authorized to fix such conditions as prerequisite to the granting of old-age assistance, and the validity of the regulations relating to the possession of cash and liquidable assets is not challenged in this proceeding. The contentions presented by defendants are that deceased, Alice Jane Knight, did not own liquidable assets in excess of the maximum allowed; that there was no misrepresentation or concealment of information with respect to the ownership of said assets which resulted in obtaining old-age assistance; that the questions involved are questions of fact and were fairly presented to the jury and the verdict is supported by ample competent testimony.

There is no dispute with regard to the source of the funds represented by the time deposit in the bank in the name of the deceased. It was shown that L. J. Knight, the husband of deceased,

died in Marshall county on June 8, 1934, leaving surviving his wife, three children, and eleven grandchildren as his heirs. No administration was had upon his estate, but the property he owned was sold, his debts and funeral expenses were paid, and there remained the sum of $800 in cash, which money was not divided among the heirs but placed on time deposit in the bank at Madill in the name of deceased, Alice Jane Knight, and it remained there until the time of her death. Each year a new certificate of deposit was issued for the original amount, plus accrued interest, and at the time of the death of deceased the deposit amounted to the sum of $895. Defendant, with reference to the deposit of funds in the bank, testified as follows:

"Q. Was it intended by the way you all handled it to give this money to your mother outright? A. No, sir. Q. What was the purpose of leaving the bank account that way? . . . A. It was to be left there that way and if she needed it for hospital or sickness or something it was to be used, and if she did not need it, it was to go to us. Q. I believe you said you never did have an administrator appointed over your father's estate? A. No. By the Court: Then she had a right to use it all? A. If she needed the money for hospital bills or something like that. By the Court: And to buy groceries? A. Anything necessary, she lived with me."

The record discloses that when deceased made application for old-age assistance she stated in said application that she had no income and no property. It further appears that she signed a form which authorized an investigator to inquire into the status of her bank account; that such inquiry was made and the investigator learned of the existence of a small checking account but did not learn of the time deposit.

As heretofore stated, the regulations with reference to property ownership as affecting the right to old-age assistance were changed from time to time. At the time of the death of decedent, the regulations provided as follows:

"(b) Whose net interest in liquid as-

sets, after making allowances for the payment of record obligations which are due and payable and evidenced by note or book account is not in excess of $250. Open accounts are not to be considered as record obligations. If both husband and wife are applicants or recipients and are living together their combined interest in liquid assets shall not exceed $400.

"Provided that the property limitations under (a) and (b) above shall, in case of aid to dependent children, apply to the parent making the application for aid.

"Liquid assets may be in the form of cash; postal savings; bank deposits; stocks, bonds, net cash or loan value in a life insurance policy or policies; trust funds; any other form of intangible asset; livestock which is not contributing directly to supplying the necessities of living of the applicant or his dependents; marketable real property, other than a family burial plot, which is not contributing directly to the living of the applicant or his dependents; implements, tools or other equipment which is not used in contributing directly to supplying the necessities of living of the applicant or his dependents."

The other regulations promulgated by the commission are similar in import to the above-quoted provisions, the principal differences relating to the amount of assets deemed sufficient to disqualify an applicant from receiving old-age assistance. It is noted that the regulations do not require that an applicant be the absolute owner of liquid assets in fixed amounts, but that one is disqualified from receiving assistance whose net interest in liquid assets is in excess of the specified amounts. It is tacitly admitted that if the money represented by the time deposit had been distributed in the manner provided by law, the share of the deceased, as the surviving wife, would have been an amount in excess of $250. The court so instructed the jury, without exception by defendant.

Plaintiff's cause of action is predicated upon the provisions of 56 O. S. 1941 § 171, which is, in part, as follows:

"If at any time during the continuance of assistance the recipient thereof

576

becomes possessed of any property or income in excess of that given in the *application* of said recipient for assistance and in such amount as would materially affect his right to assistance, it shall be the duty of the recipient immediately to notify the Commission of the receipt and possession of such property or income, or if any recipient receives assistance under this Act through misrepresentation or concealment of material facts, affecting the amount of assistance, the Commission shall, upon investigation, either cancel the assistance or reduce the amount thereof in accordance with the circumstances. *Any assistance which the recipient shall have received, by reason of such misrepresentation or concealment of facts, in excess of the amount to which he is entitled shall be recoverable as a debt due to the State and shall be paid into the State Treasury to the credit of the State Assistance Fund.* The State shall have a first and paramount lien upon all the assets and effects of said recipient to secure such repayment. . . ."

The evidence adduced in behalf of the plaintiff clearly establishes the fact that the deceased, Alice Jane Knight, was ineligible for old-age assistance in that her net interest in liquid assets was at all times in excess of the maximum amounts fixed by the regulations of the Oklahoma Welfare Commission. It was further shown that said payments would not have been made except for misrepresentation on the part of the applicant that she had no property and for concealment of the fact that there were substantial funds in the bank to her credit which might have been expended by her for "anything necessary." In the light of these facts, the amounts paid to her as old-age assistance payments are recoverable in the instant case as a debt due the state.

Since there is an entire failure of evidence to support the verdict of the jury determining the issues of fact in favor of defendants, the judgment of the trial court must be set aside.

The record discloses that demurrers of J. O. Minter and Joe Isbell, sureties on the administrator's bond, were sustained and the cause dismissed as to

them without prejudice to further proceedings against them; therefore, the question of their liability is not now before us.

The judgment of the trial court is reversed and the cause remanded for further proceedings in accordance with the views herein expressed.

CORN, C. J., GIBSON, V. C. J., and RILEY, BAYLESS, HURST, and ARNOLD, JJ., concur. WELCH, J., absent. DAVISON, J., dissents.